# Richmond

## ALFRED L. HISS AND JOHN F. RUTLEDGE, TRADING AS HISS AND RUTLEDGE v. SIDNEY M. FRIEDBERG, HERBERT L. FRIEDBERG AND SYLVIA FRIEDBERG NACHLAS.

March 7, 1960.

Record No. 5029.

Present, All the Justices.

The opinion states the case.

*Armistead L. Boothe* and *William W. Koontz* (*Boothe, Dudley, Koontz & Boothe,* on brief), for the appellants.

*R. J. Lillard* and *Henry M. deButts* (*McCandlish, Lillard, Marsh & Van Dyck; Gordon, Feinblatt & Rothman,* on brief), for the appellees.

Eggleston, C. J., delivered the opinion of the court.

This litigation arises out of the purchase of real estate in Fairfax county by Sidney M. Friedberg and others, hereinafter referred to as the Friedbergs, from Howard P. Horton and wife, in which transaction Alfred L. Hiss and John F. Rutledge, law partners practicing under the name of Hiss and Rutledge in Arlington county, were the settlement attorneys acting primarily for the Friedbergs.

The Friedbergs filed a bill in the court below against the Hortons claiming damages for the sellers' breaches of warranty and covenants of title. An injunction was prayed for and granted restraining the Hortons from negotiating the purchase-money notes pending the outcome of the suit. Hiss and Rutledge were joined as defendants and damages were sought against them for the alleged breach of their contract of employment and the violation of an escrow agreement which they had entered into with the parties with respect to the disbursement of the cash and the delivery of the purchase-money notes. Some months after the filing of the suit the Friedbergs reached a settlement with the Hortons and the suit was dismissed as to the latter. The suit was continued against Hiss and Rutledge and damages were sought against them for the expenses, including counsel fees, which the Friedbergs had incurred in their litigation against the Hortons.

After an *ore tenus* hearing the lower court entered a decree awarding the Friedbergs a judgment against Hiss and Rutledge for counsel fees of $4,165.70 paid to their local counsel, plus $1,137 which they had paid to Hiss and Rutledge for searching the title to the property,

settling the transaction, and procuring title insurance. From this decree Hiss and Rutledge have appealed challenging the propriety of the allowance of these items as damages properly recoverable of them.

The Friedbergs have assigned cross-error to the refusal of the lower court to award them, as additional damages against Hiss and Rutledge, counsel fees paid to their Baltimore counsel for services rendered in the litigation with the Hortons and reimbursement for the value of the time lost by them, the Friedbergs, in the preparation and conduct of that litigation.

The underlying facts are not in dispute and may be summarized thus: On April 5, 1957, the Friedbergs entered into a written contract with the Hortons whereby the Friedbergs agreed to buy and the Hortons agreed to sell approximately three and one-half acres of land located near Bailey's Cross Roads in Fairfax county, Virginia. The consideration called for by the contract was $181,000, of which $105,000 was to be paid in cash at the time of settlement and the balance represented by promissory notes totalling $76,000, payable in ten years with interest at the rate of six per cent. per annum, payable monthly. The sellers agreed that the property would be conveyed by general warranty deed, that the title would be good of record, and that possession would be given at the time of settlement which was to be within five days from the date of the contract.

The Friedbergs, through their counsel in Baltimore, their principal place of business, employed Hiss and Rutledge to search the title to the property, procure title insurance, and settle the transaction. Prior to and at the time of settlement there was a discussion that a man named Endy claimed an interest in the property by virtue of an unrecorded lease. While the Hortons knew the terms of the lease they did not disclose them to the purchasers. Hiss and Rutledge had likewise heard that such a lease was outstanding, but they as well as the Hortons assured the Friedbergs that the outstanding lease was of no serious consequence and that immediate possession of the property could be delivered.

However, the Friedbergs insisted that they be protected against any claim under the outstanding lease. Accordingly, the parties entered into a written agreement whereby the Friedbergs placed in escrow with Hiss and Rutledge the sum of $105,000 in cash and the purchase-money notes totalling $76,000. Under the terms of the agreement the deeds were to be recorded, the cash paid, and the notes delivered to the Hortons upon the receipt by Hiss and Rutledge of an

insurance policy issued by an accredited title company guaranteeing to the Friedbergs a fee simple title in the property "free and clear of any liens and encumbrances whatsoever."

Pursuant to this agreement Hiss and Rutledge examined, or had examined, the title to the property and filed a written application with the Kansas City Title Insurance Company, which had been authorized to do business in this State, for a title policy. One of the questions presented in this application was the "rights of parties in possession other than owner," to which the applicants replied, "None."

On April 15, 1957, Hiss and Rutledge were notified by counsel for David B. Endy and K. E. Moore that they held an unrecorded written lease from the Hortons on the property for a term of five years beginning April 1, 1956, and that under it they intended to hold possession of the property. Notwithstanding this information, Hiss and Rutledge, who had previously recorded the deed of bargain and sale and deed of trust, paid the purchase money and delivered the notes to the Hortons.

The title policy was issued on April 19 and contained a provision that it did not insure or indemnify against "Rights of parties in actual possession of all or any part of the premises other than the insured." When this policy was brought to the attention of Baltimore counsel for the Friedbergs they refused to accept it on the ground that because of the exception it did not meet the terms of the escrow agreement.

Efforts by the Hortons to remove the leasehold interest of Endy and Moore were unsuccessful and at the time of the trial of the present case they were still in possession of the property.

The present suit was instituted in June, 1957. Before it came to trial the Friedbergs reached a settlement of their claim against the Hortons for damages for breaches of warranty and covenants by reason of the outstanding leasehold held by Endy and Moore. In this settlement the Hortons agreed to reduce the principal amount of the purchase-money notes from $76,000 to $36,000, and in consideration thereof the Friedbergs executed a written release of their claims against the Hortons and a decree was entered dismissing the latter as parties defendant. In this release the Friedbergs expressly reserved their right to proceed against Hiss and Rutledge for recovery of damages attributable to their breach of contract.

On this appeal Hiss and Rutledge do not contest the lower court's finding that they were liable to the Friedbergs for breach of their contract and escrow agreement. In their assignments of error they make these contentions:

(1) The Friedbergs were fully compensated for their damages by the Hortons and are not entitled to additional monetary damages from Hiss and Rutledge .

(2) The release of the Hortons and the dismissal of the suit against them by the Friedbergs barred the recovery of actual or compensatory damages from Hiss and Rutledge.

(3) Under the Virginia decisions the Friedbergs cannot recover as damages the counsel fees paid by them in the prosecution of their suit against the Hortons.

In support of their first contention the appellants argue that since the record shows that the Friedbergs could have purchased the outstanding leasehold interest of Endy and Moore for $25,000, they should have done so and this would have been the measure of their damages against the Hortons. *Adams* v. *Seymour*, 191 Va. 372, 379, 61 S. E. 2d 23, 26. Hence, the appellants say that when the Friedbergs secured a reduction of $40,000 in the principal amount of the purchase-money notes they bettered themselves by $15,000 and have already been overpaid.

There are ready answers to this argument. In the first place, since Hiss and Rutledge, the parties guilty of breaching their contract, had the same opportunity to purchase the outstanding leasehold as the Friedbergs, the innocent parties, it was the primary duty of Hiss and Rutledge to do so and they cannot be heard to say that the Friedbergs should have performed for them. 15 Am. Jur., Damages, § 30, p. 427; 25 C. J. S., Damages, § 34a, p. 505.

In the next place, there is no showing in the present record that the total damage suffered by the Friedbergs by reason of their failure to get immediate possession of the property amounted to no more than $40,000, the reduction in the principal amount of the purchase-money notes. The mere fact that the Friedbergs were willing and able to settle their claims against the Hortons for this amount does not necessarily establish that as the measure of their loss. Nor has the measure of such loss been judicially determined in this or any other suit.

Moreover, the Friedbergs had two separate causes of action, one against the Hortons for breaches of their warranty and covenants and a separate cause against Hiss and Rutledge for the breaches of their contract of employment and escrow agreement. By reason of their breaches the Hortons became liable for damages flowing from their failure to deliver possession of the property as agreed. In their suit against the Hortons the Friedbergs could not recover as an element of

their damages the amount of counsel fees which they paid or were obligated to pay in that case. *Conrad* v. *Effinger*, 87 Va. 59, 12 S. E. 2, 24 Am. St. Rep. 646.

On the other hand, Hiss and Rutledge assumed contractual obligations with the Friedbergs and duties to them as escrow agents, the purpose of which was to insure that the Friedbergs obtain immediate possession of the property as had been agreed. Hiss and Rutledge breached these obligations, as the result of which the Friedbergs had to resort to litigation with the Hortons to secure what they had purchased. It is the cost to them of this latter litigation which the Friedbergs contend that they are now entitled to recover of Hiss and Rutledge.

Obviously, then, since the Hortons and Hiss and Rutledge were not joint contractors with the Friedbergs, the settlement of the Friedbergs' claim against the Hortons, and the release of the latter, did not constitute a settlement and release of their separate cause of action against Hiss and Rutledge.

The troublesome question is whether in this action for breach of contract the Friedbergs are entitled to recover of Hiss and Rutledge as an element of their damages the costs of their litigation, including counsel fees, with the Hortons.

It is well settled that as a general rule, in the absence of any contractual or statutory liability therefor, attorneys' fees and expenses incurred by the plaintiff in the litigation of his claim against the defendant, aside from the usual taxed court costs, are not recoverable as an item of damages in action *ex contractu*. Nor are attorneys' fees and other expenses incurred in former litigation between the same parties recoverable in a subsequent action. 15 Am. Jur., Damages, § 142, pp. 550, 551; *Burruss* v. *Hines*, 94 Va. 413, 26 S. E. 875; *Wisecarver* v. *Wisecarver*, 97 Va. 452, 34 S. E. 56.

But there are various exceptions to and modifications of this rule. It is generally held that where a breach of contract has forced the plaintiff to maintain or defend a suit with a third person, he may recover the counsel fees incurred by him in the former suit provided they are reasonable in amount and reasonably incurred. Corbin on Contracts, Vol. 5, § 1037, pp. 190, 191; Sedgwick on Damages, 9th Ed., Vol. 1, § 240, p. 480 *ff.*; Restatement of the Law, Contracts, Vol. 1, § 334, p. 531; 15 Am. Jur., Damages, § 144, pp. 552, 553.

The rule is thus stated in Corbin on Contracts, *supra*, Vol. 5, § 1037, pp. 190, 191: "Among the losses suffered by a plaintiff because of the defendant's breach of contract may be the expenses of litigation. Such

expenses are losses suffered by reason of the defendant's breach; * * *. They are affirmatively substracted from the plaintiff's wealth, and are not expected gains from performance of the contract that have been prevented. If the plaintiff can show that the defendant's breach of contract has caused litigation involving the plaintiff in the payment of counsel fees, court costs, and the amount of a judgment, and shows further that such expenditure is reasonable in amount and could not have been avoided by him by reasonable and prudent effort, he can recover damages against the defendant measured by the amount of these expenditures. The rule just stated does not deal with the cost of litigation with the defendant himself."

Whether we should adopt the rule just stated has not been previously decided by this court. *Burruss* v. *Hines, supra, Wisecarver* v. *Wisecarver, supra,* and *Kemp* v. *Miller,* 166 Va. 661, 186 S. E. 99, strongly relied on by the appellants, are distinguishable in that the disallowed counsel fees were incurred in former litigation between the parties themselves, whereas in the present case such fees were incurred in litigation between the plaintiffs, the Friedbergs, and third persons, the Hortons.

According to the weight of authority, in an action for breach of warranty or covenant, counsel fees incurred in prior litigation with a third person in defense of title are recoverable. Corbin on Contracts, Vol. 5, § 1037, p. 193; Sedgwick on Damages, 9th Ed., Vol. 1, § 238, p. 477; 14 Am. Jur., Covenants, etc., § 159, p. 586.

In *Morgan* v. *Haley,* 107 Va. 331, 58 S. E. 564, 13 L. R. A., N. S., 732, 122 Am. St. Rep. 846, 13 Ann. Cas. 204, we adopted the minority view, holding that in an action for breach of warranty and covenants, where the grantee had been evicted, his measure of damages is the price paid for the land with interest, and that counsel fees incurred in the prior litigation are not recoverable. In the present case, the appellants insist that recovery of counsel fees should be disallowed under the reasoning in that case. But the stated and limited measure of damages, which is the basis of the holding in that case, is quite different from the measure of damages in the present case.

In Massachusetts, while the rule is that in an action for breach of warranty or covenant counsel fees previously incurred are not recoverable (*Leffingwell* v. *Elliott,* 27 Mass. (10 Pick.) 204; *Reggio* v. *Braggiotti,* 61 Mass. (7 Cush.) 166 ), reasonable attorneys' fees previously and necessarily incurred in litigation caused by the defendant's breach of contract are recoverable. See *New Haven & Northampton*

*Co.* v. *Hayden,* 117 Mass. 433. In the later case, the court distinguished the two earlier cases on the ground that in neither of them "was the employment of counsel a direct and necessary consequence of the breach of contract by the defendants," while in the later case such employment was necessary to secure to the plaintiffs that for which they had contracted. 117 Mass., at page 437.

In the present case it is clear that the employment of counsel by the Friedbergs was a direct and necessary consequence of the breach of the contract of employment of Hiss and Rutledge and the breach of their escrow agreement. Because of the failure of Hiss and Rutledge to perform the obligations imposed upon them it was necessary that the Friedbergs employ counsel to secure from the Hortons that which they (the Friedbergs) had purchased and paid for. In this situation, to deny to the Friedbergs the right to recover the costs of this prior litigation is to deny them all damages for the serious breach of contract and breach of the escrow agreement by Hiss and Rutledge.

Accordingly, we hold that the lower court was right in decreeing that the Friedbergs were entitled to recover of the appellants, Hiss and Rutledge, counsel fees of $4,165.70 which they paid to their local counsel for services rendered in the previous litigation. There is no contest as to the necessity for such employment and the reasonableness of the charges.

We likewise sustain the lower court's holding that the Friedbergs were not entitled to recover the additional counsel fees paid by them to their Baltimore counsel. Whether the employment of such latter counsel was reasonably necessary was a question for the lower court which has been settled by its finding. We perceive in the record no reason for overturning that finding.

For the same reason we affirm the holding of the lower court in disallowing the Friedbergs' claim for the value of time lost and expenses incurred in the preparation and conduct of their litigation with the Hortons. We do so without deciding whether these items are proper elements of damages.

We do not agree with the lower court's finding that Hiss and Rutledge should be required to refund to the Friedbergs the fees and charges for services rendered amounting to $1,137. This item includes charges of $600 for examination of the title to the property and $50 for settlement services. The Friedbergs have received and hold the full benefit of these services. Also included is the item of $487 paid for the premium on the title insurance policy which

was issued and is still in force. Hence, there is no failure of consideration for such services and disbursement, as the Friedbergs claim.

The decree appealed from will be modified by reducing the amount of the judgment in favor of the Friedbergs to $4,165.70 with interest from the date of the decree, and as so modified, it is affirmed. The appellees having substantially prevailed on this appeal will recover their costs.

*Modified and affirmed.*