## CIRCUIT COURT OF SPOTSYLVANIA COUNTY

James C. Samuels

v.

Marshall Insurance Agency, Inc.,
and Integon Indemnity Corp.

January 19, 1996

Case No. CL94-529

BY JUDGE WILLIAM H. LEDBETTER, JR.

The plaintiff, Samuels, has asked the court to reconsider some of its rulings made at a demurrer hearing on November 20, 1995. Samuels argues that the court erroneously eliminated certain of his contract damage claims that should survive a demurrer so that he can present evidence of those items to a jury.

### Facts of the Case

It is axiomatic that all facts alleged by Samuels in his pleading, as well as all reasonable inferences that can be drawn from the allegations, are presumed true at this point. Therefore, the facts recited below are those alleged by Samuels in his second amended motion for judgment.

Samuels purchased a policy of casualty insurance on his Chevrolet Geo from Integon through its agent, Marshall. During the policy period, the vehicle was stolen and destroyed. Integon refused to pay the claim.

The policy contained a loss payee clause in favor of American Investment Bank which held a lien on the car to secure a loan to Samuels. When Integon did not indemnify for the loss, Samuels defaulted on his loan. The Bank sued him and recovered a judgment.

In this action, Samuels sues Integon and Marshall for breach of the insurance contract and for their tortious misconduct. In his contract claim (Count I), he seeks to recover the value of the vehicle ($12,000.00) plus all damages that resulted from the Bank's suit against him because of his

failure to pay the loan. In his tort claim (Count II), he seeks identical damages plus punitive damages on account of Integon's "wanton, willful, malicious, bad faith, and discriminatory" refusal to indemnify for the theft and destruction of the vehicle.

At the demurrer hearing, the court sustained Marshall's demurrer and dismissed it from the case. The court overruled Integon's demurrer to the tort claim. The court sustained Integon's demurrer to the items of damages sought in the contract claim other than the $12,000.00 claim for loss of the vehicle. It is only this last ruling that Samuels asks the court to reconsider.

## Decision

There are two broad categories of compensatory damages, direct damages and consequential damages. Direct damages are those which directly, naturally, and ordinarily flow from the cause which is the basis of the action. Consequential damages arise from the intervention of special circumstances not ordinarily predictable. *Danburg v. Keil*, 235 Va. 71 (1988); see also 5C M.J., *Damages*, § 12.

These principles apply to both tort and contract actions. However, because of the obvious difference in the nature of those types of actions, there are distinctions regarding how the principles are applied. The duty to refrain from committing a tort is a duty imposed by law. Therefore, it is only proper that a person who commits a tort should bear the risk of all proximate consequences of his wrong. On the other hand, in entering into a contract, a person is undertaking a duty not imposed by law; its assumption is voluntary, and fairness requires that he should be able to understand the extent of the obligation he undertakes. Therefore, one who breaches a contract should bear only such risk as he could have foreseen when he undertook the duty. 5C M.J., *Damages*, § 11.

As a result of that distinction between tort and contract, it is held that in contract cases, direct damages are compensable, but if the damages are determined to be consequential, they are compensable only if special circumstances were within the contemplation of the parties. *Danburg, supra*; *Morris v. Mosby*, 227 Va. 517 (1984). Whether damages are direct or consequential is a question of law. *C. & P. Telephone Co. v. Sisson & Ryan, Inc.*, 234 Va. 492 (1987).

In an action for breach of an indemnity contract, the value of the thing lost is the insured's primary damage. After all, that is the subject matter of the contract. This is not to say that there can be no other direct damages flowing from a breach of an indemnity contract. In this case, however, the

other items of damage claimed by Samuels relate not to loss of the vehicle but to his default on the loan that was collateralized by the vehicle. Even where, as here, the indemnity contract contains a loss payable clause in favor of an insured's creditor, any injury suffered by the insured because of his failure to make payments on the loan does not "naturally and ordinarily" flow from the cause, i.e., the breach of contract by the insurer's refusal to indemnify, that is the basis of the action.

It follows that the items of damages in controversy here are not direct damages.

As noted above, Samuels nonetheless may be entitled to recover these damages if there existed special circumstances within the contemplation of the parties at the time they made their contract so as to justify consequential damages.

It is important to re-emphasize that the items of damage under consideration involve injuries Samuels allegedly suffered as a result of his failure to make payments on his car loan after the car was stolen and destroyed. These items include his expenses in defending the Bank's suit, the "ridicule and embarrassment" he suffered as a result of that litigation, loss of credit because of the judgment obtained against him, and his failure to satisfy it, loss of government security clearance, and similar consequences. Surely, these losses were not reasonably foreseeable by Integon when it undertook its duty to indemnify for casualty loss of the vehicle.

But, citing *Richmond Medical Supply v. Clifton*, 235 Va. 584 (1988), Samuels argues that the question of whether "special circumstances" existed that were within the "contemplation of the parties" to the contract is for the jury to decide.

In *Richmond Medical Supply*, the parties signed a renewal lease that contained a promise by the landlord to repair a rear overhead door to the premises. He failed to do that. Thieves broke through the door and stole property belonging to the tenant. Communications between the parties prior to the lease renewal supported the tenant's contention that unlawful entry through the unrepaired door was a cause of concern and was within the contemplation of the parties when the lease was renewed. Under those facts, it is understandable that the Supreme Court would hold that the award of consequential damages, i.e., loss from the theft, was a question of fact for the jury.

Nevertheless, it should be obvious that not all alleged items of consequential damages should be submitted to the jury as "questions of fact." As an absurd but illuminating illustration, suppose an insured becomes so

upset upon learning that the insurer has rejected his indemnity claim that he leaps from a four-story building. Would that allegation in the insured's pleading give rise to a question of fact that the court should submit to a jury? Since the answer is clearly in the negative, why is this example any different from *Richmond Medical Supply*? Because *as a matter of law*, the self-inflicted wounds sustained as a result of leaping from a four-story building are so remote and extraordinary that reasonable people could not disagree that such an occurrence was not within the contemplation of the parties when they made their indemnity contract.

The same analysis applies here. It is common knowledge that destruction of collateral does not exonerate the obligor from repaying the loan. Therefore, what is the connection between the loss of the vehicle, Integon's denial of the indemnity claim, and Samuels' failure or refusal to repay the loan to the Bank? There is no suggestion that Samuels needed the use of the vehicle to generate money to make the loan payments; in fact, it appears that the car was a personal vehicle, not a commercial vehicle. There is no allegation, and no reasonable inference that can be drawn from the allegations, that Integon could have or should have contemplated these "special circumstances" if the car was lost and it denied Samuels' indemnity claim. Integon did not assume this risk when it undertook its contractual duties set forth in the insurance policy.

It bears emphasis that the court's ruling addresses only the *contract claim*. These same items of damages are alleged in the tort claim and, for reasons explained above, are not demurrable in that context. Therefore, if Samuels can make out proof of an independent tort so that his tort claim is a proper matter for the jury to consider, he will be entitled to recover damages proximately caused by that tortious misconduct, and the court does not here decide whether these items of damages would be within that definition.

The motion to reconsider is denied.